### WILMINGTON STEAMBOAT CO. v. HINES, Director General.

### THE CITY OF PHILADELPHIA.

(District Court, E. D. Pennsylvania. February 14, 1921.)

No. 35.

**Collision** ⊚⟞98—Steamer leaving dock and crossing ferryboat.

　　A collision between a steamer, which left her dock at Philadelphia after giving the proper signal and proceeded to back slowly down the river in the customary manner, and a ferryboat crossing the river to her berth below, which did not answer the steamer's signal as required by the pilot rules, but signaled her intention to proceed on her course, which she did until she struck the steamer, *held* due solely to the fault of the ferryboat.

In Admiralty. Suit for collision by the Wilmington Steamboat Com-pany, owner of the steamer Philadelphia, against Walker D. Hines, Director General of Railroads. Decree for libelant.

See, also, 263 Fed. 234.

Lewis, Adler & Laws, of Philadelphia, Pa., for plaintiff.
William Clarke Mason, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This suit was brought to recover damages to the steamer City of Philadelphia (hereinafter referred to as the Philadelphia) owned and operated as a freight and passenger steamboat by the Wilmington Steamboat Company, and plying between Philadelphia and Wilmington, as the result of a collision with the ferry-boat Mauch Chunk, running between Kaighn's Point and Philadelphia.

⊚⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The collision occurred at about 7 o'clock, July 14, 1919, while it was still light, the tide being ebb. The Philadelphia had been lying, bow in, in her dock north of Pier 5 of the Chestnut Street Wharves at Philadelphia. On the south side of this pier were the ferry slips of the Ferry Company, in which the Mauch Chunk docked while discharging and taking on passengers and freight. The Philadelphia, being ready to depart, gave a signal of one long blast on her whistle and proceeded to back out of her dock. The customary method of leaving the dock upon an ebb tide was for the vessel to back out, turn downstream with the tide, and, after being in a proper position to do so, to round to, go ahead against the ebb tide, put her helm to port, and get on her course down the river. At the time the Philadelphia was backing out of the dock, the Mauch Chunk was coming up and across the river for the purpose of making her usual landing. The Philadelphia got out into the river and was in a position with her bow upstream, when the Mauch Chunk struck her on the starboard side aft of amidships and about abreast of the engine room, breaking in the Philadelphia's broadside along the main deck for a distance of about 50 feet. The libelant claims that the Philadelphia blew one long blast to indicate that she was leaving her dock; that she continued going slow astern, gave a short signal of one blast after she got straightened out in the river, and continued to go slow astern until the collision occurred; that she got no response to either of her signals; that when the collision occurred her engines were stopped and then started astern again to back away from the Mauch Chunk.

The respondent claims that, when the Mauch Chunk was proceeding in a northerly direction, the Philadelphia was seen starting to back out of her dock, when the Mauch Chunk was about 1,000 feet out in the stream at a point opposite the ferry dock; that the master of the ferryboat, after hearing the leaving signal of the Philadelphia, blew a signal of two blasts, indicating his intention to hold his course into the dock; that immediately after this signal was given the engines of the Philadelphia were stopped, and when this was seen by the master of the Mauch Chunk he proceeded on his course toward the ferry dock to make his landing; that the Philadelphia was then drifting out into the river with her engines stopped; that after she had drifted out of her dock she started her engines backing down the river, instead of remaining in her dock until the Mauch Chunk had made her landing and as the Philadelphia continued backing down the river, she blew one blast of her whistle, whereupon the master of the ferryboat blew the danger signal, reversed his engines full speed astern, but nevertheless the collision occurred.

The fact that the leaving signal of one long blast was blown by the Philadelphia was not denied in the answer. It is established by the testimony of the master, the engineer, the pilot, and others who were upon the Philadelphia, and admitted by the master of the Mauch Chunk. Rule 5 of the Pilot Rules prescribes the signal of one long blast for vessels moving from their docks or berths, and provides that the signal shall be answered by a similar blast given by any approaching steam vessel that may be within hearing. The signal given by the Philadelphia

then was notice to the Mauch Chunk. The master of the Mauch Chunk however, gave no answering signal, but did give two blasts, indicating that he intended to keep the ferryboat upon her course into her dock. If the Philadelphia continued to back out after giving the warning signal, and gave one short blast after clearing her berth and was straightened out with the stream, obviously fully in sight of the Mauch Chunk, she was then governed by the Steering and Sailing Rules, and had a right to continue on her course astern, and the Mauch Chunk was under the duty of passing upstream across her bow if that was possible.

If, however, the engines of the Philadelphia were stopped upon getting a two-blast signal, the master of the Mauch Chunk had the right to assume that his course was clear and to proceed below the Philadelphia to make his landing. The preponderance of the evidence is in favor of the allegations of the libelant; that the Philadelphia gave the leaving signal, continued to go slow astern, cleared her dock, was swung by the ebb tide with her wheel astarboard, straightened out upon her course, gave the short, single-blast signal, and was proceeding down the river preparatory to rounding to when the collision occurred. What the Mauch Chunk did, therefore, was to attempt to cross the stern of the Philadelphia while she was on her course going astern down the river, and after she had given the signal of one blast, indicating that she intended to keep on her course, which was notice to the Mauch Chunk to pass upstream above her bow.

The evident intention of the master of the Mauch Chunk and so expressed by him by giving two blasts was to notify the Philadelphia that he intended to keep on his course, and he explains his action by stating that he saw that the Philadelphia had stopped backing when her stern was projecting a short distance beyond the pier, and, seeing this, considered he had a right to proceed. It is evident, however, from the testimony of the master of the Mauch Chunk, that, though he heard the long blast of the Philadelphia, he preferred to rely upon his eyesight rather than upon the signals prescribed by the Pilot Rules and the Steering and Sailing Rules. His testimony as to what occurred and what was in mind is somewhat confusing. He admits, however, that he could have avoided the collision by keeping his wheel to port and passing upstream above the Philadelphia. According to the respondent's witnesses, the collision occurred directly opposite the slip toward which the Mauch Chunk was proceeding; but the weight of the evidence is that it occurred opposite Pier 10 of the Philadelphia & Reading Railway's wharves, about 600 feet below the Philadelphia's dock. That being so, it seems beyond doubt that the Philadelphia did continue to go slow astern until the time of the collision, for it is improbable she would have reached the point where the collision occurred, 150 to 200 feet out in the stream and 600 feet below her dock, if she had been drifting with an ebb tide of but 3 miles an hour.

The master of the Guthrie, a government tug, which was lying at the end of the pier, testified that the Philadelphia was going slow astern until the collision occurred. The testimony that the Philadelphia gave the leaving signal of one long blast, and that she kept going astern until the collision occurred, was corroborated by the passengers on board

the vessel. There was considerable testimony to show that the method employed in taking the Philadelphia out of the dock was the usual and customary one, and must have been known to the master of the Mauch Chunk. To have stopped her engines when the master of the Mauch Chunk says they were stopped would have left the Philadelphia drifting in an ebb tide, and in all probabilities would have carried her against the Guthrie, instead of around it. The master of the Mauch Chunk must therefore have been mistaken in his observation, when he concluded that the Philadelphia had stopped her engines before leaving her berth. The Mauch Chunk had ample time and opportunity to clear the Philadelphia, and, according to the admission of her master, she could have done so, but he preferred to keep her upon her course.

It is found that the fault for the collision is in that the master of the Mauch Chunk, instead of answering the signal of the Philadelphia and keeping clear of her by crossing her bow upstream, as he should have done, kept upon his course, and, if he did give the two blasts, which he said he did, continued toward the dock without waiting for an answering signal from the Philadelphia. He was clearly guilty of negligence in causing the collision, the Philadelphia was clear of fault, and a decree may be entered for the libelant, with costs.